COLUMBIA SAVINGS BANK v. WINN *et al.*, *Appellants*.

Division One, December 24, 1895.

1. **Husband and Wife:** AGREEMENT: EVIDENCE. An agreement by the husband to pay his wife the proceeds of the sale of live stock owned by her will not be inferred at common law, in the absence of satisfactory evidence or of a uniform course of conduct tending to establish it.

2. ———: INDEBTEDNESS INTER SE: STATUTE. Money of the wife received by the husband without her consent in writing, since the going into effect of section 3296, Revised Statutes, 1879, will constitute a valid indebtedness on his part and one for which in case of his insolvency he can secure her as any other creditor.

3. ———: ———: PREFERENCES. The law imposes upon her the same obligation to act honestly and in good faith in taking preferences as is required of other creditors.

Bank v. Winn.

4. ——: FRAUDULENT CONVEYANCE: PREFERENCES. A convey-
ance by a husband to his wife is not fraudulent because the value of
the property conveyed exceeds the amount of his debt to her, it not
being in excess of the value of her property which he received from
her, with interest thereon, a part of which by operation of law had
become his notwithstanding her intention not to confer it on him.

5. ——: ——. Where a conveyance from a husband to a wife is
not fraudulent, but part of the consideration is invalid against cred-
itors, the grantee holds such interest as represents the invalid part in
trust for the creditors.

6. ——: STATUTE: INTEREST. Where a husband, by permission,
uses a wife's money in his business in producing an income for the
family, he can not, under Revised Statutes, 1889, section 3296, in the
absence of an agreement expressed or implied, be charged with inter-
est thereon.

*Appeal from Boone Circuit Court.*—HON. JOHN A.
HOCKADAY, Judge.

REVERSED AND REMANDED.

*Wellington Gordon* and *Webster Gordon* for appel-
lants.

(1) At common law marriage vested in the hus-
band the personal property of the wife, then owned, or
thereafter acquired, by her and of which he obtained
possession, the rule was predicated upon the idea of
identity of the two, but in equity the wife has such a
separate existence from her husband that she could
have and hold a separate estate. It is well settled by
repeated decisions in this state that the husband may
waive his rights to his wife's personal property and
permit her to retain the same free from his marital
claims, and this, too, though the property is a tech-
nical separate estate. *White v. Clasby*, 101 Mo. 162;
*Botts v. Gooch*, 97 Mo. 88; *Welch v. Welch*, 63 Mo.
57; *Thomas v. Thomas*, 107 Mo. 459; *Hart v. Leete*,
104 Mo. 315; *Botts v. Spencer*, 42 Mo. App. 184;

*Cooper v. Standly*, 40 Mo. App. 145; *Bethel v. Bailey*, 35 Mo. App. 463, and cases cited on page 469. (2) The proof is clear and undisputed that Mrs. Winn, at the time of her marriage in 1868, received as a gift from her father, Zadoc Riggs, a cow which had two calves, also a brood mare which had a number of colts, and from the sale of the increase from the mare and sale of the cow and two calves there was realized the sum of $487. These animals when sold were sold by the permission and consent of Mrs. Winn. She always claimed them as her property, and her husband treated and recognized them as her property, and when he received the various sums for the animals sold, he agreed with his wife to account to and pay her the money, and he thereby waived his marital rights to the property and proceeds thereof and freed her property from his marital claims. *McCoy v. Hyatt*, 80 Mo. 130; *Clark v. Clark*, 86 Mo. 116; *Welch v. Welch*, 63 Mo. 57; *Cooper v. Standly*, 40 Mo. App. 145; *Bethel v. Bailey*, 35 Mo. App. 468. (3) We insist that this evidence, both of the wife and husband, shows that the husband, A. H. Winn, in selling this stock and collecting the sum of $487, the proceeds of the sales, acted for and as the agent or trustee of his wife, and hence the money at all times continued to be her property. *Hart v. Leete*, 104 Mo. 315; *Scrutchfield v. Sauter*, 119 Mo. 625; *Roberts v. Walker*, 101 Mo. 601; *Hockensmith's Legatees v. Hockensmith*, 57 Mo. App. 378; *Tennison v. Tennison*, 46 Mo. 77; *Cox v. Cox*, 91 Mo. 71; *Hammons v. Renfrow*, 84 Mo. 332. (4) The proof is clear and undisputed that the several amounts inherited by Mrs. Winn from her half-brother's, her father's and mother's estates was subsequent to the married woman's act of 1875, then these sums and the interest thereon whether property or money, beyond all doubt

was her property, and her husband could not reduce them to his possession in but one way only, namely, by procuring her written assent to give him title thereto, and this he did not do.  *McGuire v. Allen*, 108 Mo. 409; *Broughton v. Brand*, 94 Mo. 169; *Gilleland v. Gilleland*, 96 Mo. 522; *Hart v. Leete*, 104 Mo. 315; *Gabriel v. Mullen*, 30 Mo. App. 467; *White v. Clasby*, 101 Mo. 162.  (5)  A preference among creditors will not be held invalid for fraud on the part of the debtor alone.  It must appear that the preferred creditor participated in the fraudulent intent.  The evidence in this case shows a *bona fide* debt, and fails to show any participation on the part of Mrs. Winn in any fraudulent intent her husband may have had in making her the deed to pay her debt, if there was any fraud attempted on his part.  He had a right to prefer her as his creditor and she had a right to seek and accept the preference.  *Forrester v. Moore*, 77 Mo. 651; *Shelley v. Boothe*, 73 Mo. 77; *Albert v. Besel*, 88 Mo. 150; *Frederick v. Allgaier*, 88 Mo. 601; *Sexton v. Anderson*, 95 Mo. 373; *Morgan v. Wood*, 38 Mo. App. 264.

*C. B. Sebastian* for respondent.

(1)  When the wife's property has been so mingled with the husband's, or so used by him as to create a credit in his favor on the faith of his assumed ownership, then she can not assert her claim as against creditors, who, on the faith of his ownership, gave him credit.  *McCoy v. Hyatt*, 80 Mo. 130.  (2)  "When a married woman permits her husband to use her money as his own, to invest it in his own name, and thereby obtain credit on the faith of his being the owner of the same, she can not be allowed in equity to interpose her claim to the property so acquired, to the detriment of

the husband's creditors. The doctrine of estoppel will apply to her, under such circumstances in equity." *Riley v. Vaughan*, 116 Mo. 176; *Hockett v. Bailey*, 86 Ill. 74; Pom. Eq. Jur., sec. 814; 2 Bish. Mar. Wom., sec. 490; *Brinkerhoff v. Brinkerhoff*, 23 N. J. Eq. 477; *Forbes v. McCoy*, 24 Neb. 702; *Cook v. Walling*, 117 Ind. 9, 10 Am. St. Rep. 17, and notes.

MACFARLANE, J.—This is a suit by plaintiff, a judgment creditor of defendant A. H. Winn, to set aside as fraudulent and cancel a deed made by him to his wife, defendant Ann E. Winn, to one hundred and twenty acres of land in Boone county.

The petition charges that the said defendant A. H. Winn, being the owner of the land and insolvent, and anticipating suits against him, without consideration, and with the intent to hinder, delay, and defraud his creditors, conveyed the same to his wife by deed dated April 26, 1893. It charges further that on the fifteenth day of June, 1893, plaintiff obtained a judgment against the said A. H. Winn, for the sum of $1,552.72; that he has no other property subject to execution, and that the conveyance to his wife is an obstruction to reaching the property by execution.

Defendant by answer denied the fraud charged, and stated affirmatively that defendant A. H. Winn was indebted to his wife in the sum of $1,800 and the land was conveyed to her in good faith in satisfaction of such indebtedness.

On the trial the insolvency of defendant A. H. Winn, the execution and delivery of the deed to his wife, the judgment of plaintiff and return of an execution *nulla bona* were facts not contested. It was also shown by plaintiff that nothing was paid by the wife to the husband at the time the deed was made and delivered. Certain statements and declarations of A. H.

Winn, made a few days before the conveyance, were proved.   These tended to prove that he undertook to make a statement as to what property he owned and to whom he was indebted.   No debt to his wife was mentioned.

Defendants were married in 1868, and at the time the father of the wife gave her a mare, a cow, and some sheep.   These went into possession of the husband. There was no direct evidence of an agreement between the husband and wife that the ownership of this property should continue in the latter.   The husband managed and controlled this property and its increase as his own.   No account of any kind was kept between them in respect to this property or the expense of keeping it or of the proceeds of sale of its increase.   There was evidence that several horses and mules were raised from this mare and were sold by the husband and the proceeds retained by him.   The evidence tended to prove that the wife claimed this increase and that the husband promised her that he would give her the amounts received by him from such sales whenever she called upon him for it.   These claims and promises were shown mostly by the evidence of the parties themselves.

The evidence also showed that about the year 1885 Mrs. Winn inherited from her father $667.94, from her brother $235, and from her mother $79.50, making a total of $982.44.   This amount her husband received with her knowledge and consent.   The evidence tended to prove that part of this money was used directly or indirectly in paying for the land in question.   The title to the land was taken in the name of her husband with her knowledge and the husband promised her to account for it whenever called upon.   There was no promise to pay interest on it.   So far as appears, the husband had

the entire use of the land, and the money was used in his business.

After hearing the evidence the court found for plaintiff and entered a decree setting aside the deed. From this judgment defendant appealed.

I.   Our opinion is that the evidence did not establish an indebtedness of the husband to the wife on account of the proceeds of the sale of live stock given the wife on her marriage, and of its increase.

At the time of the marriage in 1868, the common law, in respect to the property rights of husband and wife, was in force in this state.   By the common law the personal property of the wife, when reduced to possession by the husband, became vested in him in law; but, in case the husband assented to her continued separate ownership, equity treated the property as belonging to her exclusively.   These principles are well settled.   *Botts v. Gooch*, 97 Mo. 90; *White v. Clasby*, 101 Mo. 167; *Roberts v. Walker*, 101 Mo. 597, and cases cited by each.   In the case last cited it is said: "It may now be accepted as settled law in this state that a husband, by agreement with his wife and a uniform course of conduct during marriage toward her chattel property, may (as between themselves and those in privity with them) invest such property with the character of a sole and separate equitable estate which a court of equity will recognize and protect."

In a contest between the wife and the creditors of the husband over property rights, as in this case, the evidence of such an agreement and of uniform conduct, in consonance therewith, in order to overcome the presumption the common law raises, should be clear and satisfactory.   The equitable rights of the wife, after a period of twenty-four years, should not be established upon evidence of a few loose claims made by her from time to time to her husband, and equally

indefinite promises by him to account to her at some future time for the proceeds of sales, when contradicted by their constant dealing with the property. Especially should this be so when the evidence comes from the parties themselves. A few unconnected claims or promises by one to the other during twenty-four years of married life should be given very little weight in proof of such an agreement as would create the equitable right to which the wife makes claim here.

It appears clear to us from the evidence that the husband at all times, without objection from his wife, dealt with the property as his own, sales were made and the proceeds used by him in his business and in support of his family; no note or other obligation was taken from him, nor was an account of their dealings kept by either. The property was used in no other respects, than as the property of a married man is ordinarily used. There was no satisfactory evidence of an agreement that the property should remain the equitable property of the wife, nor was such an agreement established by a uniform course of conduct of the parties in respect to the property.

II. The money inherited by the wife and which went into the hands of the husband must be treated differently. Under the statute in force when this money was received the husband had no power to appropriate to his own use the personal property of his wife without her consent in writing. R. S. 1879, sec. 3296. No such consent was shown and the amount so received was a valid indebtedness from the husband to the wife, which he had the right, though at the time insolvent, to pay or secure in preference to other creditors.

But while this is so, the marital relation gave the wife no rights superior to those of other creditors, and inasmuch as preference given to the wife indirectly

inures to the benefit of the husband, transactions between them should be closely scrutinized in case fraud is charged. The law which places her upon an equality with other creditors also imposes upon her the same obligation to act honestly and in good faith, in taking preferences, as is required of other creditors. A participation by her in a fraudulent attempt on the part of her husband to conceal or cover up his property, for the purpose of putting it beyond the reach of other creditors, though an honest and valid debt is thereby secured or paid, will render the whole transaction fraudulent as to both. *Riley v. Vaughan*, 116 Mo. 176; *Sexton v. Anderson*, 95 Mo. 379.

III. The evidence creates in our minds strong suspicions, to state it mildly, that in his conveyance to his wife, A. H. Winn intended to so dispose of his property as to prevent his other creditors from reaching it. But we only deem it necessary to consider whether there was a fraudulent participation of his wife in this purpose and intent.

The evidence does not connect her in any manner with the representations he made to other creditors as to the debts he owed and the property he possessed, or indeed of any act or declaration of his in the transaction except the mere acceptance of the deed when made and offered her in settlement of her claims.

But it is said that the value of the property conveyed greatly exceeded the amount her husband owed her, and an acceptance of the deed with knowledge that it overpaid her debt conclusively fixes upon her an intention to aid her husband in covering up his property. There is no doubt that the fact that a creditor receives from his insolvent debtor, in satisfaction of his debt, property which exceeds in value the debt to be satisfied, affords a strong suspicion that the grantee is in collusion with the grantor. Indeed, the

difference between the amount and value might be so considerable as to afford sufficient proof of fraudulent participation.

The evidence shows very conclusively that the land conveyed to Mrs. Winn was at the time worth $1,800. The debt she claimed to hold against him, including the increase of the live stock given her, and allowing interest on the amounts inherited, sums up more than $1,900. She doubtless honestly believed her husband indebted to her in that amount. She had at least a fair basis for the entire amount claimed. It can not justly be said that because she included claims which, under the law, she was not entitled to collect, if collection was resisted, that her acts in that particular would invalidate the conveyance. Such claim could not be attributed to her as fraudulent, or as an effort to aid her husband in defeating his creditors. The property given her became the property of the husband by operation of law and despite her intention not to confer it upon him. As between them he had the right to account to her for it, but not as between him and his creditors. So, though a part of the consideration was invalid, there was not necessarily fraud in her willingness to accept payment of it.

IV. A part of the consideration for the deed being invalid does not, in the circumstances, render the deed fraudulent and void, but at the same time it has the effect of putting beyond the reach of creditors property of defendant A. H. Winn, which plaintiff has the right to subject to the satisfaction of its judgments. While the legal title to the land passed to Mrs. Winn she is only entitled in equity to such an interest therein as equals the debt satisfied. She must be regarded as holding the excess in trust for the use of the creditors of her grantor, or such of them as are entitled thereto under the rules of equity in such cases.

V.   In order to properly adjust the equities of the parties, it becomes necessary to inquire whether defendant Mrs. Ann E. Winn is entitled to interest on the money she inherited.   She testified that this money was invested in the land.   The land cost $1,575, and she inherited $982.44.   If this money was invested in the land for her benefit, as she claims, she could not, of course, charge interest on it.   But by her answer she charges that her husband received the money for her use, and the conveyance was made in satisfaction of the debt thus created.   This theory, we think, is supported by the weight of the evidence.   The evidence of neither party tends to prove an agreement to pay interest.   In such circumstances is interest properly chargeable as against the claims of the creditors of the husband?

While the husband may very properly be chargeable as the trustee of the wife, and while a trustee who uses the trust fund to his own advantage may properly be chargeable with interest, we are of the opinion that the relation of these parties, their duties one to the other, and each to the common family, are such as, in the absence of contract, express or implied, requires a different rule.   The statute, it is true, frees the money received by a married woman by gift, grant, or devise, from the control of the husband and exempts it from liability for his general debts, but it does not exempt the income thereof from demands against the husband for family necessaries.   R. S. 1879, sec. 3296.   The idea of the law is that each shall contribute to the support of the family not only by their joint labor and care, but from their respective incomes.

Now the evidence makes it clear that this inherited property went into the hands of A. H. Winn, the husband, and was used by him in his business and in producing an income for the general support of his family.

No agreement to pay interest was expressed, nor can one be fairly implied from the evidence. The fair conclusion is that there was no intention on the part of Mrs. Winn to charge her husband with interest. Without an agreement, or circumstances from which one may be fairly inferred, the relation of the parties, and their respective duties and obligations are such that equity does not require the husband to account for interest on money with which he had been intrusted by his wife. This would be so whether the husband be regarded as the trustee of the wife or merely as her debtor. She shared in the income of the money in common with other members of the family, and must be taken as acquiescing in the use the husband made of it. 2 Bish. Married Women, sec. 360; *Lishey v. Lishey*, 6 Lea (Tenn.), 418; *Logan v. Hall*, 19 Iowa, 500, and cases cited; *Roach v. Bennett*, 24 Miss. 100.

The rule here announced is entirely consistent with the provisions of the statute relating to interest. R. S. 1879, sec. 2723. The money was not "retained without the owner's knowledge of the receipt," nor was "an express promise to pay interest" made. Neither does the evidence show that "a demand of payment" was made which is necessary to start the running of interest on mere accounts.

As has been said, Mrs. Winn, by the conveyance to her, can only be held to have acquired an interest in the land equal to the amount her husband owed her. The creditors of the husband, or such of them as, by their diligence, have secured a preference, are entitled to have what remains subjected to their judgments. The judgment will therefore be reversed and cause remanded, with directions to the circuit court to set aside the conveyance and order the land sold, and out of the proceeds pay defendant Ann E. Winn the amount she inherited, which went into the hands of her husband,

and out of what remains pay, *first,* all costs of this suit, including costs of appeal, and *second,* pay the balance toward the satisfaction of the judgment of plaintiff, or the judgment of plaintiff and of such other creditors as may appear, by their diligence, to be equally entitled to share therein.

All the judges of this division concur.